UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-603 |
| SMX 98, INC., *et al*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

**I.     Introduction**

Pending before the Court is the declaratory plaintiff, Great American Insurance Company of New York's ("GAIC") second motion for summary judgment (Docket Entry No. 62). GAIC filed a brief in support of its motion (Docket Entry No. 63), the defendants, Spaw Maxwell Company, L.P. (now known as Spawmaxwell Company LLC) and SMX 98, Inc. (collectively, "SMX"), submitted a response to this motion (Docket Entry No. 85) and GAIC filed a reply in support of its motion (Docket Entry No. 88). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby denies GAIC's motion.

**II.    Factual Background**

The pertinent facts in this dispute are set forth in the Court's earlier memorandum opinion and order denying GAIC's first motion for summary judgment (Docket Entry No. 53). Beyond the previously presented factual basis, it is of note that on May 27, 2009, Memorial Hermann Hospital System ("MHHS") filed a claim under its property insurance with Federal Insurance Company ("FIC"). This claim pertained to the repair of the Memorial Hermann

Hospital Tower (the "tower"). On December 22, 2009, FIC paid $9,605,345.00 to MHHS under this claim.

### III. Contentions

#### A. The Plaintiff's Contentions

GAIC maintains that summary judgment in its favor is appropriate. To this end, it argues that undisputed evidence establishes that levels 29–33 of the tower were not enclosed during Hurricane Ike. Thus, it asserts that there was no insurance coverage (under its contract of insurance with SMX) for the tower at that time. Further, it maintains that there is no evidence of bad faith by GAIC because there is no proof that it violated the Texas Insurance Code (the "TIC"). Lastly, to the extent that GAIC must cover SMX's damages, it seeks an offset or credit in the amount of the insurance payment from FIC to MHHS relating to damage to the tower during Hurricane Ike.

#### B. The Defendants' Contentions

SMX states that summary judgment is inappropriate. To this end, it argues that GAIC has not established that the "fully enclosed building" exclusion clearly and unambiguously precludes coverage of SMX's damages. Second, it asserts that, with regard to the TIC claims, GAIC is not entitled to summary judgment because: (1) it has not established that no coverage exists, (2) fact questions exist on the TIC issue and (3) GAIC has not addressed each of SMX's claims. Lastly, with regard to GAIC's argument that its insurance provides for "excess" coverage, SMX states that this is incorrect because: (1) GAIC's "other insurance" clause is inapplicable, (2) MHHS will not enjoy a windfall from insurance and (3) proration of damages among the pertinent insurance companies is appropriate.

**IV.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625.  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004).  Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V. Analysis & Discussion

### A. Full Enclosure

GAIC asserts that "[t]he undisputed evidence is that levels 29-33 of the building were not fully enclosed before or during Hurricane Ike. Accordingly, the property at issue was not in a fully enclosed building during Ike and coverage is excluded . . . ." Premised upon this assertion, GAIC moves for summary judgment on its claims against SMX.

On that subject, Chris Kay Kapetanankis (Senior Vice President of Irvine DCS Team LLC, a company that provides consulting/management for large construction projects) stated in an affidavit that:

> On the day of the hurricane, I also visited the levels above 28. Although some windows were not yet installed on those levels, I observed plastic sheeting being installed over window locations. On the 29th floor, workers had constructed wood platforms over the stairwells seal off the 29th level from the 28th level . . . . There were also temporary framed walls and wood water dams.

While this evidence is not conclusive on the issue of whether the tower was fully enclosed when Hurricane Ike hit, it is sufficient to allow a reasonable jury to return a verdict for SMX on this issue. *See Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 468 n.14 (1992). Accordingly, summary judgment is improper on this issue.

### B. Alleged Bad Faith

GAIC proffers two related arguments dealing with its alleged bad faith actions: (1) "since the uncontroverted evidence is that the Tower was not a fully enclosed building due to the top five floors not being completed, and the rain exclusion applies to exclude coverage for this loss, there can be no bad faith as a matter of law;" and (2) "GAIC moves for summary judgment

that there is no evidence of bad faith and SMX' bad faith claims should be dismissed." The Court disagrees with both arguments.

Since the first argument relies on the Court finding that GAIC had no duty to pay SMX's claims (which this Court has not found), GAIC's requested summary judgment must be denied. With regard to GAIC's second grounds for summary judgment, a Texas court of appeals has stated:

> An insurer breaches its duty of good faith and fair dealing by denying or delaying a claim when the insurer's liability has become reasonably clear. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex. 1997). The focus is not on whether the insured's claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. *See Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993); *Oram v. State Farm Lloyds*, 977 S.W.2d 163, 166–67 (Tex.App.—Austin 1998, no pet.). This inquiry is a fact issue. *See Giles*, 950 S.W.2d at 56. Absent legally sufficient evidence of bad faith, however, [a plaintiff's] claims under the common law, insurance code chapter 541, and the DTPA are subject to summary judgment. *See U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268–69 (Tex. 1997) (summary judgment dismissing common law claim proper where no evidence of bad faith); *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999) ("[W]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims."). Evidence establishing only a "bona fide coverage dispute," without more, does not rise to the level of bad faith. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *Williams*, 955 S.W.2d at 268 . . . . An insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44–45 (Tex. 1998); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997).

*Spicewood Summit Office Condo. Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 & n.9 (Tex.App.—Austin 2009, pet. ref'd) (footnotes omitted).

SMX argues that, under the above-stated standard, summary judgment is not proper. To this end, it asserts that GAIC failed to reasonably investigate its claims. Specifically, it states (with references to the record omitted) that:

> GAIC also retained an adjuster, Donald Graham, to investigate SpawMaxwells claim. Graham produced four reports, but GAIC's own retained expert agreed that those reports were "superficial." The reports did not assist in determining where the damage was, how much damage there was, and how much it would cost to repair. GAIC's retained expert testified that water damage was the most critical thing to investigate, and he would have investigated the water damage and worked with environmental consultant TGE to do so, but that there is no indication that Graham did so. GAIC's expert also would have detailed the location and extent of the damage room by room, but Graham's superficial report did not do that, either.

This argument, premised upon the affidavit of Philip Barnard, is sufficient to raise a genuine issue of material fact with regard to SMX's allegations of bad faith by GAIC. Accordingly, summary judgment on this issue is improper.

### C. Offsets and Credits from Other Insurance

GAIC states that it "is entitled to an offset or credit in the amount of the total insurance payments made by [FIC to MHHS] for the property damage at issue in the instant lawsuit." This position is premised upon a clause in its insurance policy that provides:

> If there is other insurance covering the same loss or damage, other than that described . . . above, we will pay only for the amount of covered loss, or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

SMX disagrees with this position.

FIC's payment to MHHS has been characterized as a loan to MHHS that would only be repaid if SMX recovers in this lawsuit and then transfers the recovered funds to MHHS. GAIC disagrees with this characterization. However, it has not established, as a matter of law, that the payment from FIC to MHHS was not a loan. Moreover, in contrast to GAIC's position, SMX has introduced evidence to the contrary. *See* (Docket Entry No. 47, ex. 23). Accordingly, GAIC has not established, as a matter of law, that "there is other insurance covering the same loss or damage" (as required for the above quoted insurance clause to be applicable). This is because

the FIC insurance policy may not fully cover the pertinent losses. Thus, summary judgment is not proper with regard to this argument.

On a related issue, GAIC asserts that, under *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, it is entitled to a "dollar for dollar credit or offset against the amount paid by [FIC to MHHS] for any amounts for which coverage may apply [under the present insurance policy.]"[1] 236 S.W.3d 765 (Tex. 2007). The Court disagrees. As pointed out by SMX (with emphasis added), "*Mid-Continent* involved a dispute between two insurers that provided separate commercial general liability policies to the *same insured*." Further, this distinction is present throughout the cases discussed in *Mid-Continent*. *See id.* at 772–73. Thus, since FIC and GAIC

---

[1] *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.* provides, in pertinent part, that:

> We recognized long ago in *Hicks Rubber* "the general rule that, if two or more insurers bind themselves to pay the entire loss insured against, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurer, or co-insurers, for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurers." [*Traders & Gen. Ins. Co. v. Hicks Rubber Co.*, 169 S.W.2d 142, 148 (Tex. 1943).] The right of action is one of contribution, the elements of which require that the several insurers share a common obligation or burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden. *Employers Cas. Co. v. Trans. Ins. Co.*, 444 S.W.2d 606, 609 (Tex. 1969) (citing 18 Am. Jur. 2d Contribution § 7 (2004)).
>
> We also recognized in *Hicks Rubber*, however, that this direct claim for contribution between co-insurers disappears when the insurance policies contain "other insurance" or "pro rata" clauses. 169 S.W.2d at 148. A pro rata clause operates to ensure that each insurer is not liable for any greater proportion of the loss than the coverage amount in its policy bears to the entire amount of insurance coverage available. *Id.* at 147. The effect of the pro rata clause precludes a direct claim for contribution among insurers because the clause makes the contracts several and independent of each other. *Id.* With independent contractual obligations, the co-insurers do not meet the common obligation requirement of a contribution claim-each co-insurer contractually agreed with the insured to pay only its pro rata share of a covered loss; the co-insurers did not contractually agree to pay each other's pro rata share. *Employers Cas. Co.*, 444 S.W.2d at 609. In addition, the co-insurer paying more than its contractually agreed upon proportionate share does so voluntarily; that is, without a legal obligation to do so. *Id.* at 609–10. Thus, a co-insurer paying more than its proportionate share cannot recover the excess from the other co-insurers. *Hicks Rubber*, 169 S.W.2d at 148. The effect is not the same with respect to the insured's right of recovery. When an insured is covered by multiple policies containing pro rata clauses, and the insured has not been fully indemnified, the insured may enforce this contractual obligation to recover the multiple insurers' shares of the covered loss, so long as the shares are within the respective insurers' policy limits. *See id.* at 147–48.

236 S.W.3d 765, 772 (Tex. 2007).

are not co-insurers to the same insured, *Mid-Continent* is distinguishable, and the Court will not extend *Mid-Continent* to apply to the instant case. Premised upon the above discussion, the Court denies GAIC's requested summary judgment on this issue.[2]

## VI.   Conclusion

Based on the above, the Court hereby DENIES GAIC's motion for summary judgment.[3]

It is so **ORDERED.**

SIGNED at Houston, Texas this 6th day of May, 2010.

_____
Kenneth M. Hoyt
United States District Judge

---

[2] The Court declines to resolve (at this time) the legal issues presented by the parties that are not germane to the present request for summary judgment.
[3] Any requested relief that is not expressly granted herein is hereby denied.